IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-549-FL

| | |
|---|---|
| RACHELLE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's 25 & 29). The time for the parties to file any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-25) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-29) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits ("DIB") on January 23, 2008 alleging that she became unable to work on December 15, 2005. (Tr. 16). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a

1

decision dated December 18, 2009. *Id.* at 16-23. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on October 7, 2010. *Id.* at 3. The Appeals Counsel received additional evidence on October 25, 2010. *Id.* at 1. However, the Appeals Council found no basis for re-opening the original decision, and, therefore, another request for review was denied on January 12, 2011. *Id.* Plaintiff filed the instant action on December 6, 2010. (DE-1).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
>
> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to

2

determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
>
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2005. (Tr. 18). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) fibromyalgia; 2) osteoarthritis; 3) irritable bowel syndrome ("IBS"); 4) gastroesophageal reflux disease ("GERD"); and 5) degenerative disc disease. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Based on the medical record, the ALJ

determined that Plaintiff had the residual functional capacity ("RFC") to perform light work. *Id.* at 22.

The ALJ then proceeded with step four of his analysis and, based on the testimony of a vocational expert ("VE"), determined that Plaintiff was able to perform her past relevant work as a teacher's aide. *Id.* at 23. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* These determinations were supported by substantial evidence, a summary of which now follows.

A March 3, 2004 MRI of Plaintiff's lumbar spine revealed "[l]ower lumbar facet joint degenerative disease (most prominent at L4-5) . . . [and m]ild L3 through S1 disc bulging/protrusion but without herniation." *Id.* at 235.

During a March 11, 2005 examination, Plaintiff was "not having any symptoms." *Id.* at 231. On April 19, 2005 Plaintiff had "no complaints." *Id.* at 230. However, on October 6, 2005, Plaintiff had "a laundry list of complaints . . . [including] pain throughout her body." *Id.* at 229. Again on January 16, 2006, it was noted that Plaintiff was "having overall general pain, including her back pain." *Id.* at 227. When re-examined on February 13, 2006, however, Plaintiff was "doing fairly well." *Id.* at 228. Nonetheless, on May 16, 2006, Plaintiff complained of "pain in the neck and entire trunk as well as generalized soreness in all of her extremities." *Id.* at 251. She rated her pain a "7", with 10 being the maximum tolerable pain. *Id.* Upon examination, Plaintiff's range of motion was described as "essentially within normal limits" and "near full." *Id.* Her grip strength was "well below normal limits", however. *Id.* at 252. During the examination, Plaintiff tolerated 40 minutes of continuous sitting and was able to ambulate on a treadmill for eight minutes. *Id.* In addition, she was able to lift and carry 10 pounds, although she tolerated this poorly and experienced left arm pain. *Id.* at 253. It was

determined that Plaintiff was not capable of performing sedentary work. *Id.* at 254.

Dr. Ioana C. Stanescu examined Plaintiff on June 7, 2006. *Id.* at 249-250. Plaintiff complained of pain "all over the body . . ." *Id.* at 249. Upon examination, Plaintiff had no swelling and good range of motion. *Id.* at 250.

On November 10, 2006, Plaintiff had no muscle atrophy or weakness. *Id.* at 260. Her joints were intact and she had a normal gait. *Id.* Likewise, Plaintiff's fibromyalgia was described as "doing well" on May 11, 2007. *Id.* at 222. On November 12, 2007 it was noted that Plaintiff was no longer taking Lortab for her fibromyalgia and that spa treatments alleviated Plaintiff's chronic pain. *Id.* at 223.

A February 5, 2008 pelvic ultrasound revealed a probable small left hydrosalpinx. *Id.* at 352.

Dr. Tin Le examined Plaintiff on March 27, 2008. *Id.* at 328-332. Plaintiff complained of muscular pain all over her body, although this pain was "controlled by medication." *Id.* at 330. Furthermore, Plaintiff denied any weakness in her extremities. *Id.* Likewise, Plaintiff denied any nausea, vomiting or diarrhea and stated that any abdominal pain was also controlled by medication. *Id.* She ambulated without difficulty. *Id.* In addition, Plaintiff had full muscle strength in her hands and extremities. *Id.* at 331. Ultimately, Dr. Le opined that Plaintiff had "no impairment affecting her ability to perform normal daily tasks." *Id.*

Plaintiff's RFC was assessed by Dr. Robert Panza on April 1, 2008. *Id.* at 320-327. It was determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday; 4) sit (with normal breaks) for a total of about six hours in an eight hour workday; and 5) lift and/or carry with no limitations other than those already noted for lifting and

5

carrying. *Id.* at 321. No postural, manipulative, visual, communicative or environmental limitations were noted. *Id.* at 322-324. Dr. Sankar Kumar reviewed Plaintiff's medical records on April 17, 2008 and affirmed these determinations. *Id.* at 319.

On June 10, 2008, Dr. Wendy Cipriani noted that Plaintiff's GERD was "doing well." *Id.* at 363. During this examination, Plaintiff stated that the night before "she hurt so much she could not even get up to take her Lortab." *Id.* Dr. Cipriani opined that Plaintiff had a kidney stone. *Id.*

Diagnostic examinations conducted on June 11, 2008 revealed, *inter alia*,: 1) no urologic calculus, obstruction or mass; 2) an ovarian cyst with a small amount of free fluid; and 3) a hepatic cyst. *Id.* at 268.

A June 18, 2008 pelvic ultrasound revealed a persistent probable small left hydrosalpinx. *Id.* at 378.

Dr. Glen Nowachek examined Plaintiff on June 26, 2008. *Id.* at 376. He recommended conservative treatment for Plaintiff's abdominal pain and that Plaintiff undergo another ultrasound. *Id.*

On July 7, 2008 Dr. Cipriani diagnosed Plaintiff with "chronic generalized pain, likely fibromyalgia." *Id.* at 336. She further stated that Plaintiff's prognosis was "poor", noting that Plaintiff had shown "no interval improvement since 2005." *Id.* However, Dr. Cipriani conceded that there were "no labs and/or diagnostic tests to support the diagnosis of fibromyalgia." *Id.* at 337. Plaintiff's primary symptoms were chronic pain, fatigue and mild depression. *Id.* Dr. Cipriani opined that Plaintiff could only sit, stand and/or walk for one hour out of a eight hour workday. *Id.* at 338. She further determined that Plaintiff could occasionally lift and/or carry no more than 10 pounds. *Id.* at 339.

6

Plaintiff complained of fatigue on September 9, 2008, although a box checked on her appointment intake form noted that all other systems were normal. *Id.* at 349. Dr. Cipriani noted that she was not sure whether Plaintiff's fatigue and pain were caused by fibromyalgia or osteoarthritis. *Id.* at 361.

On December 16, 2008, Plaintiff was assessed with "questionable fibromyalgia. *Id.* at 359. Her GERD was stable. *Id.* Plaintiff's fibromyalgia was described as "worsening" on March 17, 2009. *Id.* at 357. Specifically, Plaintiff stated that "she hurts everywhere." *Id.* Plaintiff's GERD was responding well to treatment. *Id.* Plaintiff's GERD was doing well on June 17, 2009. *Id.* at 372. She had no acute issues with her IBS. *Id.* Dr. Cipriani stated that Plaintiff was experiencing a flare-up of her fibromyalgia and had "pain everywhere." *Id.*

Plaintiff had another fibromyalgia "flare up" on January 6, 2010, *Id.* at 418. Prior to this, she had been taking her Lortab sparingly. *Id.* Dr. Cipriani noted that Plaintiff "continues to be in chronic pain" on February 11, 2010. *Id.* at 416. However, Dr. Cipriani did not mention Plaintiff's IBS, GERD or fibromyalgia. *Id.* On April 5, 2010, Dr. Cipriani stated that she needed "to get a second opinion" regarding Plaintiff's fibromyalgia and degenerative joint disease. *Id.* at 427. It was noted that Plaintiff had multiple joints that were painful and symmetrically tender. *Id.* She also had "ongoing muscle spasms in [the] bilateral trapezoid and neck area." *Id.*

An August 6, 2010 X-ray of Plaintiff's thoracic spine revealed "Grade I L3-L4 anterolisthesis [and l]ower lumbar sclerotic facet arthritis." *Id.* at 436.

Plaintiff testified during the hearing in this matter. She stated that since 2005 she is often in pain and very tired, and that she was ultimately diagnosed with "fibromyalgia, and arthritis, irritable bowel, and . . . reflux." *Id.* at 36. Her fibromyalgia causes her pain "all over [her] body." *Id.* at 37. Likewise, Plaintiff testified that her arthritis resulted in pain in her back, knees

7

and ankles. *Id.* at 38. According to Plaintiff, this arthritis pain was worsened by standing, sitting or laying. *Id.* Plaintiff's IBS caused her to experience constipation, diarrhea, and intestinal spasms. *Id.* at 39. She alleged that she could sit for about "45 minutes to an hour" before needing to stand up, and that she was able stand up easily from a seated position. *Id.* at 41. However, she later testified that she drove a car for about hour and a half at a time on a regular basis. *Id.* at 44. Similarly, Plaintiff indicated that she could stand in one position for 30 to 45 minutes before needing to sit down. *Id.* Furthermore, Plaintiff asserted that: 1) she could not walk "two city blocks" without stopping; and 2) she could only lift and carry 5 to 10 pounds. *Id.* at 42. Despite these limitations, Plaintiff was capable of completing chores around the house. *Id.* at 43. Due to her symptoms, Plaintiff asserted that she had difficulty sleeping. *Id.* at 45. In addition, Plaintiff testified that her symptoms caused her to spend "about half the day" lying down. *Id.* at 45-46.

Dr. Helen Cannon also testified at Plaintiff's hearing. She stated that Plaintiff "has a well-documented diagnosis of fibromyalgia with osteoarthritis." *Id.* at 47. However, Dr. Cannon added that Plaintiff's impairments did not meet or equal any specific listing. *Id.*

Finally, the VE testified that Plaintiff work history as a teacher aide could be categorized as "light" and her past relevant work as a eligibility worker as "sedentary." *Id.* at 49.

Based on this record, the ALJ made the following specific findings:

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . .
>
> The claimant's fibromyalgia is not characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). There is no involvement of one major peripheral weight-bearing joint, resulting in an inability to

8

ambulate effectively, or the involvement of one major peripheral joint in each upper extremity, resulting in an inability to perform fine and gross movements effectively. Therefore, her fibromyalgia does not meet or equal the criteria for listing 1.02.

The claimant's osteoarthritis is not characterized by a history of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively. Therefore, her osteoarthritis does not meet or equal the criteria for listing 14.09.

The claimant's DDD has not resulted in the compromise of a nerve root (including the cauda equina) or the spinal cord. There is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. Consequently, her DDD does not meet or equal the criteria for listing 1.04.

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 10 pounds frequently and 20 pounds occasionally, and to stand and walk for up to six hours in an eight-hour work day, and to sit for up to six hours in an eight-hour work day . . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . .

The Administrative Law Judge has considered the state agency residual functional capacity assessment, but declines to adopt it in full because it fails to give sufficient consideration to the claimant's impairments and limitations arising therefrom, and did not take into account subsequent medical evidence . . .

The undersigned finds that the opinion of Dr. Cipriani is not supported by objective medical evidence and is without substantial support from the other evidence of record, which obviously renders it less persuasive.

To summarize, having considered the objective medical evidence, the claimant's subjective complaints, and the opinions of treating, examining,

> and non-examining physicians, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform light work.
>
> The claimant is capable of performing past relevant work as a teacher aide and eligibility worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity . . .
>
> Therefore, the undersigned Administrative Law Judge finds that based upon the claimant's residual functional capacity, she could return to her past relevant work and this conclusion is supported by the evidence of record and the hearing testimony. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed . . .
>
> The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2005 through the date of this decision . . .
>
> (Tr. 18-23)(emphasis in original omitted).

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her claims are without merit.

Plaintiff contends that the ALJ failed to adequately discuss the weight assigned to: 1) Dr. Cipriani's opinion; and 2) the opinion of a physical therapist, Mr. Harry Moore. (DE-26, pg.

7, 11). Specifically, she argues that "[i]t is unclear to subsequent reviewers of the decision to determine . . . the ALJ's reasoning for finding that [Dr. Cipriani's] opinion is at odds with objective evidence of record when in fact the opinion is very much consistent with other objective evidence." *Id.* at pg. 9. Likewise, Plaintiff argues that the ALJ failed "to evaluate the objective findings produced by Mr. Moore's evaluation." Id. at pg. 12. The undersigned disagrees. On contrary, the ALJ discusses at length why these opinions were inconsistent with much of the evidence of the medical record. (Tr. 19-22).

As noted by Defendant:

> Dr. Cipriani's opinion generally is inconsistent with the bulk of the medical evidence cited by the ALJ, records that include Dr. Cipriani's own treatment records. Such records note that Plaintiff:
>
> • had no difficulty during a face-to-face interview during the disability application process (Tr. 133-34);
>
> • was not in acute distress and/or was alert and oriented (Tr. 330, 405, 407-08);
>
> • had normal ranges of motion in her cervical or lumbar spine, or a normal ability to ambulate (Tr. 250, 251, 315, 330, 422);
>
> • had an ability to perform postural functions such as bending and squatting (Tr. 319, 322, 330);
>
> • had an ability to perform daily tasks (Tr. 319, 320-28, 330, 332);
>
> • had normal ranges of motion (or was otherwise unremarkable) in her extremities (Tr. 251, 308, 330, 332, 405);
>
> • had no atrophy, muscle weakness, or weight loss (Tr. 249, 256, 313, 330, 421);
>
> • showed no problems in, and/or had "normal" (or was "negative" for problems in her) musculoskeletal and other systems (Tr. 256, 257, 260, 261, 262, 294, 330, 349, 350, 356, 358, 362, 369, 370, 384, 407, 409, 418, 426, 433-34);

11

• had normal grip strength (Tr. 330);

• had no edema, no swelling, or gross motor deficits (Tr. 218, 222, 250, 297, 298);

• had MRI exams showing normal alignment, minor facet joint changes, well maintained vertebral body heights and disk spacing, minor sclerotic facet arthritis, and/or mild bulging in her spine (Tr. 235, 279, 402, 436);

• showed some improvement when taking, but flare ups when not taking (or refusing to take), medication (Tr. 223, 224, 258, 295, 330, 357, 372, 373, 418);

• was "doing well" or "clinically well" (Tr. 222, 228, 297, 300, 406); and

• had well-controlled IBS or GERD (Tr. 222, 223, 224, 227, 258, 261, 297, 299, 357, 372, 373).

Additionally, several physicians who either directly examined Plaintiff or reviewed her medical records found that Plaintiff did not have a combination of disabling impairments. See Tr. 329-32 (Consultative Examiner Tin T. Le, M.D., found that Plaintiff did not have an "impairment affecting her ability to perform normal daily tasks")2; Tr. 320-28 (Robert Panza, M.D., found that Plaintiff could perform medium work); Tr. 319 (Sankar, Kumar, M.D., affirmed Dr. Panza's RFC opinion); and Tr. 47-48 (Dr. Helen Cannon, M.D., who reviewed all of the medical records, opined that Plaintiff's impairments were not disabling).

(DE-30, pg. 7-8).

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Id. (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given

12

controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209, * 2 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

In his decision, the ALJ fully explained his reasoning in weighing the medical evidence, including Dr. Cipriani's and Mr. Moore's opinions. These reasons were supported by substantial evidence and, therefore, Plaintiff's claims are without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-25) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-29) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Friday, December 16, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE